# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

AMELIA PETERSON,

        Plaintiff(s),

        v.

THE CITY OF ROCHESTER, *et al.*,

        Defendant(s).

**DECISION & ORDER**
06-CV-6003

## Preliminary Statement

This lawsuit stems from plaintiff Amelia Peterson's five year employment with the City of Rochester (hereinafter "the City"), which ended with her termination on July 22, 2005. Relying on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), the New York Human Rights Law, 15 N.Y. Exec. Law § 290 et seq. ("NYHRL"), 42 U.S.C. § 1983 ("Section 1983"), and the First and Fourteenth Amendments, Peterson alleges that during her employment with the City she was subject to gender and race discrimination, sexual harassment, a hostile work environment and retaliation. With the instant motion, the City moves for summary judgment to dismiss plaintiff's complaint. (Docket # 33).

## Factual Background

Between them, Peterson and the City have filed hundreds of pages of deposition transcripts, documents and other materials as part of the record supporting their positions in seeking and

opposing summary judgment. For purposes of this Decision and Order, the Court will only summarize the evidence necessary for its determination. In doing so, it is important to remember that in the summary judgment context, "[t]he evidence of the non-movant is to be believed." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 254 (2d Cir. 2002)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

Plaintiff Amelia Peterson was employed with the City of Rochester as a Counseling Specialist for the Family Crisis and Intervention Team ("FACIT") from August 2000 through July 22, 2005. From August 2000 through June 2004, plaintiff worked in the Maple Section/West Section. Plaintiff's job responsibilities included visiting the scenes of homicides, suicides and other neighborhood problems, and offering assistance to crime victims and their families by counseling them. See Affidavit of Amelia Peterson (hereinafter "Peterson Aff.") annexed to Docket # 34 at ¶ 11. For the first three years of her employment, she was the only African American woman working as a FACIT Counseling Specialist. See id. at ¶ 3.

According to plaintiff, shortly after her employment with defendant commenced she began to experience harassment from her male co-workers. See id. at ¶ 14. Specifically, plaintiff claims that she was continuously harassed on the basis of her gender and race in the following ways: (1) she was repeatedly "threatened and

demeaned" in front of other co-workers; (2) she was repeatedly placed in physical danger; (3) she was subject to false and erroneous memoranda being written about her job performance; (4) lewd and racially loaded rap music was repeatedly played in her presence; (5) her co-worker Investigator Fiorica "would play loud gangster rap music and used excessive profanity" outside plaintiff's office door; (6) she received repeated anonymous "explicit sexual" telephone prank calls to her private home; (7) a co-worker left a "Pre-Booty Call Agreement" document on her office chair which contained explicit sexual comments; and (8) she was threatened and stalked by Supervisor Lopez. See id. at ¶¶ 17, 23, 26, 33-35, 38, 42, 46-49.

Beginning in October 2000, plaintiff often complained about the harassment and maltreatment to her supervisors and managers, including Supervisor Compertore and Manager Wildman. Plaintiff's Union Representative, Angelo Muratore, repeatedly forwarded plaintiff's complaints to management and the Department of Human Resources and argued with them "to take some action." See Affidavit of Angelo Muratore (hereinafter "Muratore Aff.") annexed to Docket # 34 at ¶ 6. Claiming the City failed to act, Muratore organized a meeting with Commander Giblin so that plaintiff could explain her situation. On November 17, 2003, a meeting was held with Commander Giblin, Supervisor Compertore, Union Representative Jeanne Marciano, Muratore and plaintiff. See id. at ¶ 8; Peterson

Aff. at ¶ 59. During that meeting, plaintiff informed Commander Giblin of the harassment she was receiving by the Maple Section police officers, and Compertore admitted that something "adverse" was going on in the Maple Section. See Muratore Aff. at ¶¶ 9-10; Peterson Aff. at ¶¶ 60-61.

Shortly after the November 17th meeting ended, plaintiff claims to have experienced retaliation for complaining to Commander Giblin. Specifically, plaintiff claims that Lieutenant Noble instructed the Maple Section officers to report her at any chance they got, and several officers stood in front of her office door and shouted profanities. See Peterson Aff. at ¶¶ 70-71. Beginning on November 19, 2003, plaintiff claims that subpoenas requiring her to appear in court began getting tampered with. Id. at ¶¶ 72-73.

On December 3, 2003, plaintiff drafted a formal written complaint which detailed the incidents she had experienced in the Maple Section between 2000 and 2003. See id. at ¶ 65. In her December 3rd letter, she indicated that the intent of her letter was "to make a formal complaint; request the assistance of Mr. Ange Muratore of the AFSCME Local 1635 Union and finally to formally notify my employer the City of Rochester of this harassment, discrimination, retaliation and disparate treatment." See id. at ¶ 66; see also Exhibit "G" attached to Volume II annexed to Docket # 34. Muratore hand delivered plaintiff's December 3rd letter complaint to Commander Giblin. See Muratore Aff. at ¶ 16.

In June 2004, plaintiff was transferred from the Genesee Section office to the East Side Division. According to plaintiff, beginning in July 2004 her East Side office desk was repeatedly trashed and vandalized. See Peterson Aff. at ¶ 86. In September 2004, plaintiff became the subject of an internal affairs investigation, following an incident that took place on September 16, 2004 between plaintiff and her neighbors at 15 Spar Circle. On November 7, 2004, plaintiff again complained to the Union that Lopez and Compertore were "harassing me and discriminating against me." See id. at ¶ 114. On November 30, 2004, the Rochester Police Department issued a letter to plaintiff which notified her that she was being suspended from work for five days due to her "inappropriate and unprofessional conduct during a dispute with your ex-neighbor." See id. at ¶¶ 114-15; Exhibit "EE" attached to Volume II annexed to Docket # 34. On December 7, 2004, the Union filed a grievance on plaintiff's behalf. According to plaintiff, she was subject to more retaliatory conduct after the Union filed the grievance.

On March 22, 2005, plaintiff filed a charge of discrimination with the New York State Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). See Exhibit "A" attached to Volume II annexed to Docket # 34. Less than 90 days later, on June 17, 2005, Compertore sent a memorandum to Commander Giblin therein requesting that insubordination charges be brought

against plaintiff. <u>See</u> Exhibit "UUU" attached to Volume II annexed to Docket # 34. That same day, Compertore sent another memorandum to Commander Giblin in which he recommended that plaintiff's employment be terminated. <u>See</u> Exhibit "WWW" attached to Volume II annexed to Docket # 34. On July 22, 2005, plaintiff affirmatively terminated her employment with the City of Rochester by mailing a "Constructive Termination Letter" to Captain Peter Burnett. <u>See</u> Exhibit "BBBB" attached to Volume II annexed to Docket # 34. In her letter, plaintiff indicated that the reason for her constructive termination was because "The City of Rochester, Rochester Police Department and AFSCME Union have failed to stop a pattern of intentional discriminatory, harassing, retaliatory and unlawful treatment, etc. that I have been subjected to for the last 4-1/2 years." <u>Id.</u> On July 25, 2005, Compertore issued another memorandum to Commander Giblin in which he "strongly recommend[ed] termination for Ms. Peterson." <u>See</u> Exhibit "AAAA" attached to Volume II annexed to Docket # 34. On July 28, 2005, the City formally terminated plaintiff's employment.

With the instant motion for summary judgment, the City claims that most of the harassing and retaliatory and hostile incidents alleged by plaintiff are barred by the 300 day statute of limitations period applicable to federal discrimination actions. More substantively, the City argues that Peterson was not treated any differently than other employees in her position, and her

charges of hostile work environment and retaliation are without any merit.

## Discussion

I. <u>Summary Judgment Standard</u>:  The general principles used to evaluate the merits of summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is warranted where "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  All inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. <u>Thompson v. Gjivoje</u>, 896 F.2d 716, 720 (2d Cir. 1990); <u>Donahue v. Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 57 (2d Cir. 1987). While the burden of showing that no genuine factual dispute exists is on the defendant, when faced with a properly supported summary judgment motion, plaintiff "must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001).  "Such an issue is not created by a mere allegation in the pleadings, nor by surmise or conjecture on the part of the litigants."  <u>United States v. Potamkin Cadillac Corp.</u>, 689 F.2d 379, 381 (2d Cir. 1982)(internal citations omitted).  Finally, "the mere existence of factual issues

– where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment." Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985)(per curiam).

In evaluating the merits of a summary judgment motion in the context of a discrimination claim, courts must be cautious in granting the relief where the conduct at issue "requires an assessment of individuals' motivations and state of mind" because juries have "special advantages over judges in this area." Brown v. Henderson, 257 F.3d at 251. Nevertheless, "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). "[S]ummary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994); see Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001)("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

II. Plaintiff's Claims: The allegations in plaintiff'S Complaint can be grouped into three substantive categories: (1) Title VII and New York Human Rights Law claims alleging sexual and racial harassment though a hostile work environment; (2) Title VII

8

and New York Human Rights Law claims alleging retaliation, and (3) a Section 1983 claim alleging that the City violated her First Amendment right to freedom of speech and association. Before analyzing the merits of each category of claim, the Court will address the statute of limitations arguments raised by the City.

Title VII Claims: Peterson has alleged two distinct federal claims governed by Title VII – hostile work environment and retaliation. A plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within 300 days of filing the charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(e)(1). "The 300 day filing requirement functions as a statute of limitations" and "is strictly construed in this Circuit." Curry v. Fed. Express Corp., No. 03-CV-619S, 2006 WL 839426, at *5 (W.D.N.Y. Mar. 28, 2006).

1. Hostile Work Environment: Title VII's anti-discrimination prohibition extends to hostile work environments. Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 63-68 (1986). "[I]n the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability." Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004)(quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)).

9

Here, plaintiff filed her EEOC charge on March 22, 2005. <u>See</u> Exhibit "A" attached to Volume II annexed to Docket # 34. Accordingly, as a general matter, any Title VII discrimination claims based on events occurring before May 26, 2004 would be barred by the 300 day limitations period. The record confirms that Peterson continuously complained that she was harassed and subjected to a hostile work environment for years prior to the termination of her employment with the City. Because Peterson does point to some allegedly hostile actions[1] occurring after May 26, 2004 (*i.e.*, vandalism, stalking) I find that her hostile work environment claim is timely.

2. <u>Claims of Retaliation</u>: Plaintiff's Third Cause of Action is entitled "Retaliation Under Title VII." <u>See</u> Complaint (Docket # 1) at p. 40. In this claim, plaintiff alleges that the City "engaged in a pattern of illegal retaliation [in violation of Title VII]" by "allowing Plaintiff to be placed in threatening positions in the field, vandalizing Plaintiff's desk, numerous disciplinary memos, interference with subpoenas, incidents involving her work schedules, paycheck and employee evaluation" and "by failing to engage in any investigation whatsoever into her claims of harassment at the hands of her immediate supervisor and co-workers." <u>Id.</u> at ¶ 136. Plaintiff alleges that defendants'

---

[1] The City's argument that plaintiff has failed to prove that the alleged harassment was based upon plaintiff's race or gender is addressed when considering the merits of Peterson's claims.

retaliatory actions culminated in her constructive discharge after she filed "her formal charge of discrimination." Id.

Based on the Complaint as well as the record before the Court and the arguments of counsel, the Court views the adverse act at issue here as plaintiff's termination from employment. To the extent plaintiff seeks damages under Title VII for adverse retaliatory acts that occurred prior to May 26, 2004 (should such adverse acts exist), I find they are outside of the Title VII limitations period and may not form the basis for a compensable retaliation claim. See National R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). However, such acts may be considered as "background evidence" in considering liability for the timely acts alleged. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 176-77 (2d Cir. 2005).

New York Human Rights Law Claims: Plaintiff also alleges sexual and racial harassment through the creation of a hostile work environment and retaliation, respectively. These claims are virtually identical to plaintiff's Title VII claims of the same heading, except they invoke provisions of the New York State Human Rights Law ("NYHRL"). While identical in substance, the statute of limitations for these state law claims is three years. Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997). Thus, as

to these NYHRL claims, discriminatory conduct within three years from commencement of suit (January 4, 2006) is actionable.

Section 1983 Claims: Plaintiff's Sixth Cause of Action alleges "First Amendment Violations." This claim is raised pursuant to 42 U.S.C. § 1983 and accordingly carries a three year statute of limitations. Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002).

The Court now turns to the substance of plaintiff's claims.

A. Sexual and Racial Harassment Through Hostile Work Environment: Under Title VII, "[t]o prevail on a claim of sexual [or racial] harassment based on a hostile work environment, a plaintiff must establish two elements: (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Stepheny v. Brooklyn Hebrew Sch. for Special Children, 356 F. Supp. 2d 248, 262 (E.D.N.Y. 2005)(quoting Petrosino v. Bell Atl., 385 F.3d 210, 221 (2d Cir. 2004)); see Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)(plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insults). To succeed, plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive. See

12

Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003).

Whether particular harassment in a given case is "severe or pervasive enough to be actionable depends on the totality of circumstances." Cruz, 202 F.3d at 570. The Second Circuit has cautioned trial courts against employing a "mathematical equation of sorts" or trying to "establish an absolute baseline for actionable behavior" in determining summary judgment motions in the context of a hostile work environment claim. Hayut, 352 F.3d at 746. Nevertheless, certain factors should be considered in determining whether the plaintiff has met her evidentiary burden on a summary judgment motion, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with" the victim's job performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Where the record fails to demonstrate that the workplace was permeated with severe and pervasive harassment and discrimination, defendants are properly entitled to summary judgement. See, e.g., Demoret v. Zegarelli, 451 F.3d 140, 150 (2d Cir. 2006)(hostile work environment claim fails because alleged incidents "are insufficient as a matter of law to meet the threshold of severity or pervasiveness required for a hostile work environment").

The most difficult issue presented by the City's summary judgment motion is whether the alleged harassment was based upon the plaintiff's race or gender, which is an essential element of the plaintiff's hostile work environment claim under Title VII. The City strenuously argues that "none of the complained of conduct provides the basis for a fact-finder to reasonably conclude gender or racial animus." See Defendants' Memorandum of Law annexed to Docket # 33 at p. 9. It is true that "it is easy to claim animus" in employment discrimination cases. Alfano v. Costello, 294 F.3d 365, 377-79 (2d Cir. 2002)(reversing district court and granting defendants' motion for judgment as a matter of law on hostile environment claim in part because plaintiff failed to adduce proof that gender neutral incidents involving plaintiff and her supervisors were part of a campaign to harass plaintiff on the basis of her sex). That being said, it is also true that gender or race neutral incidents may also be included among "the 'totality of circumstances' that courts consider in any hostile work environment claim." Id. at 378. Moreover, simply because an act does not involve obvious or overt evidence of racial or gender animus does not automatically disqualify it from being considered evidence of racial or gender harassment. Hussain v. Long Island R.R. Co., No. 00 CIV. 4207(THK), 2002 WL 31108195, at *6 (S.D.N.Y. Sept. 20, 2002)("Although hostile work environment claims most commonly involve acts of verbal or physical harassment, concrete acts of

14

discrimination affecting terms and conditions of employment can contribute to a hostile work environment.").

Although a close question, I find that there are questions of fact as to whether the alleged harassment of plaintiff was based upon the plaintiff's race or gender. For the majority of her employment with the City, plaintiff was the only African American woman working as a FACIT Counseling Specialist. Plaintiff has presented proof of several overtly hostile acts arguably related to race and gender animus such as co-workers repeatedly playing lewd and racially loaded rap music outside her office door, and leaving a sexually crude and offensive "Pre-Booty Call Agreement" on her office chair. She has also presented proof that when she complained about the harassing conduct the City's response was inadequate or non-existent and a jury might conclude the City's "response" exacerbated the hostile workplace. See Muratore Aff. annexed to Docket # 34 at ¶ 103 ("I have never seen a civilian City of Rochester employee be harassed as badly as Peterson."). I also find that a jury could credit plaintiff's allegations that Commander Giblin, who plaintiff and Union Representative Muratore met with on November 17, 2003 to discuss the harassment she was receiving, did not properly investigate the claims of discrimination in the workforce nor take any corrective measures to alleviate the alleged racially and gender hostile environment.

On a motion for summary judgment, I must consider the evidence in the context of whether any reasonable finder of fact could return a verdict in favor of the non-moving party. See Higazy v. Templeton, 505 F.3d 161, 168-69 (2d Cir. 2007). Moreover, the Second Circuit has instructed that "[i]n a hostile work environment case, it may well be a proper exercise of the district court's broad discretion to allow the plaintiff to build her case partly by adducing incidents for which the link to any discriminatory motive may, in the first instance, appear tenuous or nonexistent. The plaintiff must, however, establish at trial that incidents apparently sex-neutral were in fact motivated by bias." Alfano, 294 F.3d at 377. Here, there are certainly questions as to whether the issues plaintiff faced during her employment were motivated by unlawful discrimination. However, I also find that plaintiff has adduced enough evidence to have the issue of racial or gender animus to be decided by the jury and not resolved as a matter of law. See Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir.1996) (holding that when ruling on a summary judgment motion the court should not assess the credibility of witnesses, which is solely within the province of the jury). For these reasons, the City's motion for summary judgment on plaintiff's state and federal hostile work environment claims is denied. See Demoret v. Zegarelli, 451 F.3d 140, 152 (2d Cir. 2006)(The standard for liability for state law claims for hostile work environment is

the same as the federal Title VII claims).

B. Retaliation Claims: Title VII prohibits an employer from "discriminat[ing] against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by" Title VII. See 42 U.S.C. § 2000e-3(a). Plaintiff alleges that her employment was constructively discharged and then ultimately terminated for complaining of discrimination in her workplace.

A claim of retaliation is subject to the familiar burden-shifting analysis used by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)(applying McDonnell Douglas analysis to retaliation claims). "Retaliatory discharge in violation of Title VII occurs when a retaliatory motive plays a part in [the discharge], ... whether or not it was the sole cause ... [or] when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist." Id. at 1177-78 (citation and quotations omitted); see also Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)("Title VII is violated when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist.").

Under the McDonnell Douglas analysis, the plaintiff has the initial burden of first establishing a *prima facie* case of

17

retaliation. "If a plaintiff sustains the initial burden, a presumption of retaliation arises. In turn, under the second step of the burden-shifting analysis, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. Finally, as for the third step, once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action," *i.e.*, that the employer's explanation is really a pretext for retaliation. Jute, 420 F.3d at 173 (internal citation omitted). A plaintiff establishes her *prima facie* case if she can establish that: (1) she engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) the employer was aware of that activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action. Id. Plaintiff's burden in demonstrating a *prima facie* case has been characterized as "minimal" and "*de minimis*." Id. Notably, even "informal protests" of unlawful employment practices, such as complaints to management, constitute "protected activity." Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).

*Prima Facie* Case: Plaintiff's March 22, 2005 written complaint to the New York State Division of Human Rights ("NYSDHR") constituted a "protected activity" of which the City was aware, and plaintiff suffered an adverse employment action in that her

employment was terminated by the City on July 28, 2005.  In terms
of her minimal burden to establish a causal connection between her
protected activity and her termination, I find plaintiff has met
this initial burden based on the timing of her termination.  The
Second Circuit has held a causal connection can be established by
showing temporal proximity between the protected activity and the
adverse action.  See Manoharan v. Columbia Univ., 842 F.2d 590, 593
(2d Cir. 1988)("Proof of the causal connection can be established
indirectly by showing that the protected activity was closely
followed in time by the adverse action.").

Here, plaintiff alleges that she had repeatedly complained to
her superiors and Union Representative about her co-workers' and
Supervisors' harassment of her.  When no action was taken, she
filed a formal written complaint with the NYSDHR on March 22, 2005.
Less than three months later, on June 17, 2005, Compertore sent
memoranda to Commander Giblin in which he requested that
insubordination charges be brought against plaintiff and that her
employment be terminated.  Then, on July 25, 2005, Compertore
issued another memorandum to Commander Giblin in which he "strongly
recommend[ed] termination for Ms. Peterson." Three days later, the
City formally terminated plaintiff's employment.  The fact that
Compertore requested that plaintiff be terminated within eleven
weeks of her written complaint to the NYSDHR, and the City granted
that request and terminated plaintiff's employment within four

months of filing her complaint, establishes the requisite "causal connection" for a *prima facie* case of retaliation. See <u>Kessler v. Westchester County Dept. of Soc. Servs.</u>, 461 F.3d 199, 210 (2d Cir. 2006)(finding causal connection where supervisor questioned plaintiff's loyalty two months after plaintiff filed a complaint); <u>Stephens v. State Univ. of N.Y. at Buffalo,</u> 11 F. Supp. 2d 242, 250 (W.D.N.Y. 1998)(approximate seven-month gap between plaintiff's filing of discrimination complaint with the NYSDHR and defendant's issuance of notice of discipline, as well as approximate five-month gap between plaintiff's amendment of his discrimination complaint and his termination, were sufficient to permit inference of causal connection between plaintiff's protected activity and adverse employment actions, for purposes of establishing a *prima facie* case of retaliation under Title VII).

<u>Legitimate Non-Retaliatory Reasons for Termination</u>: In response to plaintiff's *prima facie* showing, the City raises plaintiff's insubordination as its legitimate reason for terminating her. Specifically, defendants argue that "the actual pattern here is that Plaintiff engaged in policy violations and/or misconduct, was reprimanded or disciplined, which begat complaints from Plaintiff followed by more policy violations by Plaintiff, more discipline or reprimands by Defendants, and then more complaints by Plaintiff." <u>See</u> Defendants' Reply Memorandum annexed to Docket # 38 at p. 7. I find that the City has satisfied its

burden of providing a legitimate, non-discriminatory reason (insubordination) for plaintiff's termination.

Pretext: In the final stage of the burden shifting analysis, plaintiff must show that retaliation was a substantial reason for the adverse employment action. See Jute, 420 F.3d at 173 (Court considered whether plaintiff demonstrated that retaliation was a "substantial reason" for defendant's adverse actions). The relevant inquiry under the facts here is whether plaintiff's insubordination was an intervening event which breaks any causal connection between plaintiff's complaint of sexual and racial discrimination and the City's decision to terminate her employment. See Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005)(inference of causation defeated due to "substantial intervening events" between the protected activity and the allegedly retaliatory discharge).

This is certainly a case where the parties dispute the relationship between the insubordinate behavior and the adverse employment action which culminated in plaintiff's discharge. For purposes of summary judgment however, Peterson has provided proof upon which a jury could reasonably conclude that the City's response to plaintiff's conduct was excessive and motivated by retaliatory animus. Whether Compertore's request that plaintiff be terminated was truly motivated by her alleged insubordinate acts during June 2005 or instead was in retaliation for her accusations

of racial and sexual discrimination against defendants is an issue of fact. Plaintiff has produced sufficient evidence for a reasonable jury to conclude that defendants' stated reason for her termination was a pretext for unlawful retaliation. See Muratore Aff. at ¶ 105 (Peterson's "termination was clearly retaliatory."); Affidavit of Peter Nickles (hereinafter "Nickles Aff.") annexed to Docket # 34 at ¶ 48 (Plaintiff was "an above average employee who should not have under these circumstances been fired from the Rochester Police Department."). Accordingly, defendants' motion for summary judgment as to plaintiff's Title VII and NYHRL retaliation claims is denied.[2]

C. Section 1983 Claim: Plaintiff invokes 42 U.S.C. § 1983 to allege a claim for "First Amendment Violations." See Complaint (Docket # 1) at p. 46. Specifically, plaintiff claims that "[t]he sexual and racial harassment by defendants deprived plaintiff of her First Amendment Rights to freedom of speech and freedom of association." Id. To establish a First Amendment retaliation claim, plaintiff must demonstrate that "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and

---

[2] Peterson has also adduced sufficient evidence to create an issue of fact as to whether she was constructively discharged. See Muratore Aff. at ¶¶ 101-105; Nickles Aff. at ¶¶ 46-48. Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996)("Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign")(citations and quotations omitted).

the adverse employment action, so that it can be said that his speech was a motivating factor in the determination." Cobb v. Pozzi, 363 F.3d 89, 102 (2d Cir. 2004)(citation and quotations omitted). In moving for summary judgment, defendant argues, *inter alia*, that plaintiff's "speech" was not protected because it did not address a matter of public concern. For the reasons that follow, I agree.

It is well settled that "[p]ublic employees do not surrender their First Amendment rights to comment on matters of public interest by virtue of their acceptance of government employment." Id. at 101. Nevertheless, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Myers, 461 U.S. 138, 147 (1983); see Huth v. Haslun, No. 08-2203-cv, 2010 WL 839442, at *3 (2d Cir. Mar. 11, 2010)("Whether speech by a public employee is protected from retaliation under the First Amendment begins with this question: whether the employee spoke as a citizen on a matter of public concern.")(internal quotations and citation omitted).

"Whether or not speech addresses a matter of public concern must be determined by the content, form, and context of a given

statement, as revealed by the whole record, and while motive surely may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." Sousa v. Roque, 578 F.3d 164, 175 (2d Cir. 2009)(internal citation and quotations omitted). While the determination of whether speech constitutes a matter of public concern "may be somewhat fact-intensive, it presents a question of law for the court to resolve." Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003). The "public concern" requirement applies to both freedom of association claims and retaliation claims. Cobb v. Pozzi, 363 F.3d at 102-07.

"Under the public concern doctrine, when 'expression cannot be fairly considered as relating to any matter of political, social or other concern to the community,' but is simply a personal matter, it is not afforded First Amendment protection." Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 105-06 (2d Cir. 2001)(quoting Connick v. Myers, 461 U.S. at 146). Thus, where complaints are "personal in nature" and "generally relate[] to [the employee's] own situation," the public concern requirement has not been satisfied. Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775, 781 (2d Cir. 1991); see Huth v. Haslun, 2010 WL 839442, at *4 ("Much like other public employee speech that we have held not to be protected from retaliation by the First Amendment, Huth's lawsuit was personal in nature and generally related to her own situation.")(citation and quotations omitted).

Viewed under this standard, plaintiff has failed to demonstrate that her speech was a matter of public concern. To be sure, "discrimination in employment is without doubt a matter of public concern." Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 125 (2d Cir. 2005). But a public employee does not automatically meet the "public concern" requirement simply by filing a claim of gender discrimination with her employer where the complaint is focused purely on personal grievances in the workplace. See, e.g., Nair v. Oakland County Cmty. Mental Health Auth., 443 F.3d 469, 478 (6th Cir. 2006)(where plaintiff's complaint "focuse[d] on the reduction of [his] responsibilities and hours, not those of anyone else" and did not address any issues of public health, court dismissed his First Amendment claim); Collins v. Allen, No. 1:04-CV-572, 2006 WL 2505928, at *7 (S.D. Ohio Aug. 29, 2006)(where plaintiff's sexual harassment complaints did not allege any pattern of discrimination by her employer but "were directed at her own job conditions, and were made to protect her self-interest" court rejected First Amendment claim); Oppenheim v. Gutteridge, 225 F. Supp. 2d 185, 189 (D. Conn. 2002)(where "all [plaintiff] complained about was her own dissatisfaction with the way she personally was being treated by [her supervisor]," First Amendment retaliation claim failed); see also Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999)("speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment,

does not pertain to a matter of public concern"); <u>Saulpaugh v. Monroe Cmty. Hosp.</u>, 4 F.3d 134, 143 (2d Cir. 1993)(Plaintiff's retaliation claim fails because her complaints to the union were "personal in nature and generally related to her own situation")(citation and quotations omitted).

The record before this Court establishes that plaintiff's complaints about her supervisors were motivated by plaintiff's personal interests and anger and not some unselfish desire to protect the public or improve working conditions for African American or female employees of the City.  As such, her speech was personal in nature, intended to remedy her own working conditions and did not pertain to a matter of public concern. Where "there is no suggestion in this record that she wanted to debate issues of ... discrimination, that her suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that her suit was part of an overall effort ... to correct allegedly unlawful practices or bring them to public attention," a public employee's personal complaints about discrimination is not speech on a matter of public concern. <u>Huth v. Haslun</u>, 2010 WL 839442, at *4 (citation and quotations omitted); <u>see also</u> <u>Alexander v. City of New York</u>, No. 02 Civ. 3555(TPG), 2004 WL 1907432, at *13 (S.D.N.Y. Aug. 25, 2004)("[A] First Amendment retaliation claim is narrower in scope than a Title VII retaliation claim in that, for purposes of a First Amendment retaliation cause

of action, complaints about individual acts of discrimination or harassment are <u>not</u> generally deemed to be of 'public concern.'"). For this reason, defendants' motion for summary judgment as to plaintiff's § 1983 cause of action is granted.

### Conclusion

Defendants' motion for summary judgment (Docket # 33) is **granted in part and denied in part**.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 3| , 2010
Rochester, New York